# EXHIBIT 1

(J 2021 804
Andrews


*1048963880*

## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

FEB 2 5 2021

RICK WARREN
COURT CLERK

|   |   |   |
|---|---|---|
| 1. | **ANDREA LODES,** | ) |
|    |  | ) |
|    | **Plaintiff,** | ) |
|    |  | ) |
| v. |  | ) |
|    |  | ) |
| 1. | **LIFETIME FITNESS, INC.,** | ) |
|    |  | ) |
| 2. | **LTF CLUB MANAGEMENT** | ) |
|    | **COMPANY, LLC, a/k/a** | ) |
|    | **LT CLUB MANAGEMENT, LLC.,** | ) |
|    |  | ) |
|    | **Defendants.** | ) |

Case No. CJ-2021-
112 _____

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

CJ - 2021 - 804

### PETITION

**COMES NOW THE PLAINTIFFF**, Andrea Lodes, hereby pleads her claims as follows:

### PARTIES

1.  The Plaintiff is Andrea Lodes, an adult female resident of Oklahoma County, Oklahoma.

2.  The Defendants are LifeTime Fitness, Inc. (hereinafter "Defendant LifeTime Fitness") and LFT Club Management Company, LLC, a/k/a LT Management, LLC (hereinafter "LifeTime Management"), both foreign companies doing business in Oklahoma County, Oklahoma.

1

## VENUE

3.   Plaintiff's claims are for gender discrimination and retaliation (including creation of a hostile working environment) after Plaintiff opposed such harassment, in violation of Title VII of the Civil Rights Act of 1964 and Oklahoma's Anti-Discrimination Act.

4.   A majority of the conduct occurred in Oklahoma County, Oklahoma, wherefore venue is proper in this Court.

## STATEMENT OF FACTS 

5.   The Defendants, separately and/or jointly, employed at least fifteen employees in at least twenty weeks in the current or proceeding calendar year such that both are employees as defined by Title VII.  There is no minimum employee requirement to be an employee under the OADA.

6.   Defendant LifeTime Management holds itself out as Plaintiff's employer on her W2 form and also does business as LFT Club Management, LLC which holds itself out as Plaintiff's employer on her pay stubs.  To Plaintiff's knowledge and belief, Defendant Lifetime Fitness, Inc. holds itself to the Equal Employment Opportunity Commission (EEOC) as the Plaintiff's employer.  All defendants exercised control over Plaintiff's job, including supervisory authority and day-to-day authority such that all are Plaintiff's direct employers, an integrated enterprise and/or are joint employers and are jointly and/or severally liable for the claims herein.

2

7. Defendants recruited Plaintiff and offered her the position of Elite Yoga Instructor.

8. Ms. Lodes accepted Defendants' offer and, around the summer of 2018, became employed with Defendants as an Elite Yoga Teacher.

9. As part of Plaintiff's position she was required to attend a certain number of training seminars/courses which were selected and paid for by the Defendants.

10. Around June 2018, Plaintiff was told by Tim King (General Manager) and Jamie Berg (recruiter from Defendants' corporate office) that she (Plaintiff) would be selected and trained to become a "Master Trainer" and an "Exclusive Lifetime Instructor", both promotions in terms of title, rank and pay. Plaintiff was told the only requirement to obtain these promotions was to maintain a certain number of classes taught and to attend Faculty Life Power Yoga Teacher Training with Johnny Kest in order to be certified to host and lead the Life Power 200 hour Yoga Teacher Training for LifeTime members and the general public.

11. Plaintiff followed the instructions given by Mr. King and Mr. Berg and successfully taught the requisite number of yoga classes required to obtain the promotions described in para. 9, above.

12. LifeTime Fitness is in partnership with Jonny Kest and holds Mr. Kest out as a "Guru" or "Master Trainer" of yoga.

13. Mr. Kest's job title with Defendant is also "National Director of Yoga".

14. Mr. Kest is a high-ranking employee and/or representative of the Defendant and significantly higher within Defendants' chain of command than the Plaintiff.

15. As an employee of Defendants, the Plaintiff was required to attend yoga training taught by Mr. Kest.

16. On or around October 17, 2018, at the direction of her employer, Plaintiff attended a training session in Plano, Texas taught by Mr. Kest.

17. The training session was supposed to consist of Mr. Kest providing verbal instructions and demonstrating yoga poses by engaging in yoga poses in front of the group attending training.

18. At no time during the training session did Plaintiff consent, explicitly or implicitly, to Mr. Kest touching her body.

19. During one point in the training session, while Plaintiff was lying on her back on her yoga mat, Mr. Kest walked up to Plaintiff and:

   A.   grabbed Plaintiff's leg and pushed Plaintiff's left leg over her body where her ankle was above her head;

   B.   pressed his entire body on top of the Plaintiff's, with Plaintiff's bent leg still over her head;

   C.   Took Plaintiff's bottom in each of his hands and spread her bottom cheeks apart; and

D.     pressed his genitalia through his clothing onto Plaintiff's genital area while still lying on top of Plaintiff, in what appeared to be a simulated sexual act.

20.     As soon as Mr. Kest began moving Plaintiff's leg over her head the Plaintiff began asking him to stop touching her.  Plaintiff told Mr. Kest to "stop" and attempted to move Mr. Kest away from her by pushing with her hand and lifting her hand in a "stop" gesture.

21.     However, Mr. Kest refused to stop and proceed with conduct described in paras. 19-20, above.

22.     Following this initial incident, Mr. Kest, Defendant proceeded to walk around the training session, and returned to the Plaintiff, approximately five (5) minutes later, and repeated his exact conduct, as described in paras. 19-20, only this time with Plaintiff's right leg. Plaintiff, again, attempted to stop Mr. Kest's actions by telling him to "stop" and pushing Mr. Kest away with her hands.

23.     Mr. Kest's conduct was not consistent with recognized yoga poses or yoga instruction.

24.     Mr. Kest's conduct was unwanted, objectively offensive, offensive to the Plaintiff, severe and/or pervasive, and created a hostile working environment for the Plaintiff.

25.     Plaintiff felt that Mr. Kest's conduct constituted an assault (including a sexual assault), a battery on her person and sexual harassment.

26. Plaintiff reported Mr. Kest's conduct to her supervisor who in turn conveyed Plaintiff's sexual harassment complaint to General Manager Tim King. Plaintiff's complaint was reported to Mr. King and others (beyond her immediate supervisor to whom she complained within hours of the assault/harassment occurring) on or around October 30, 2018.

27. Defendants did not take any action to address Mr. Kest's conduct.

28. After Plaintiff opposed sexual harassment, Defendant began a steady and ongoing pattern of retaliation including (but not necessarily limited to):

    A. Denying Plaintiff the promotions to the positions of "Master Trainer" and Exclusive Lifetime Instructor", even though Plaintiff had successfully completed the only requirement to obtain the position – teaching a sufficient number of yoga classes;

    B. Denied Plaintiff opportunities to attend training and/or instruct yoga classes (including yoga training courses), although before Plaintiff's complaint she had been selected to attend the training sessions and/or teach the classes, including those as follows:

        i. Around December 2018 denying Plaintiff the ability to attend a yoga training class titled "Facility YTT";

        ii. Around March 2019 Plaintiff was denied the opportunity to teach "OKC YTT" training;

iii.    Around June 2019 Plaintiff was denied the opportunity to teach a course title "Slowburn Solstice";

iv.    Around September 2019 Plaintiff was denied the opportunity to teach another OKC YTT training course;

v.    Around September 2019 Plaintiff was denied the opportunity to teach another OKC TTY training class;

vi.    Around October 2019 Plaintiff was denied the ability to attend a training course titled "Faculty YTT";

vii.    On or around January 2021, Plaintiff was denied the ability to attend a training course titled "OKC YTT".

29.    For each training opportunity and/or teaching assignment Plaintiff was denied, as discussed in Para. 28, above, Defendants gave these opportunities to employees who had not previously complained of Mr. Kest's conduct.

30.    Around November 8, 2019, the New York Times published an article discussing Mr. Kest touching female yoga students on and between their breasts and his (Kest's) opinion indicating that he does not ask permission before touching female yoga students on intimate parties of their bodies.  The article also discussed Mr. Kest's yoga instructions conducted through Defendants Lifetime.

31.   Soon after the article was published, Plaintiff's supervisors, and the Human Resources Department, reached out to her and indicated a belief that Plaintiff was the person complaining of Mr. Kest's conduct to the New York Times.

32.   Plaintiff again complained of Mr. Kest's conduct toward her during the October 2018 training she attended in Plano, Texas.  Plaintiff again reported that Mr. Kest's conduct was sexual harassment.

33.   Defendant continued to retaliate against Plaintiff including removing her classes from Defendant's yoga class schedule, continuing to deny her training and other teaching opportunities.

34.   Around November 2019, Plaintiff was denied a promotion to a higher ranking yoga position.

35.   Around December 2019, Defendant revoked its offer to have Plaintiff teach a yoga training course referred to as a "60 minute sampler".  Defendant then selected as the yoga teacher someone who had not complained of Kest's conduct.

36.   Around January 2020, Defendant removed Plaintiff as the instructor for training referred to as "Spring YTT".  Defendant gave the instructor position to an employee who had not made similar complaints about Mr. Kest.

37.   Around February 2020, Plaintiff was denied the opportunity to attend a training known as "Faculty TYY", but others who had not complained of Mr. Kest's conduct were allowed to attend.

38.    As a direct result of Defendant's conduct the Plaintiff has suffered, and continues to suffer, wage loss (including back, present and front pay) and emotional distress/dignitary harm including worry, stress, embarrassment, frustration and similar unpleasant emotions.

39.    At the least, Defendants' conduct was motived by Plaintiff's gender and/or complaints of sexual harassment, the latter of which are also "but-for" causes of the retaliatory conduct described above.

40.    Plaintiff has exhausted her administrative remedies by timely filing an EEOC charge of discrimination around May 19, 2020.  The EEOC issued Plaintiff her right to sue letter on December 17, 2020 and Plaintiff received such letter thereafter.  This petition is timely filed within ninety (90) days of Plaintiff's receipt of her right to sue letter.

41.    Gender discrimination, including in the form of creation of a sexually hostile working environment and retaliation (including denial promotions, training opportunities, teaching opportunities and removal of job duties, and perpetuation and/or creation of a hostile working environment including a retaliatory hostile working environment) violates Title VII of the Civil Rights Act and Oklahoma's Anti-Discrimination Act.

9

42. Under Title VII and the OADA Plaintiff is entitled to her wage loss (including back, present and front pay and related benefits), and emotional distress/dignitary harm damages.

43. Plaintiff is entitled to liquidated damages under the OADA.

44. Because Defendants' conduct was willful or, at the least, in reckless disregard of Plaintiff's federal rights, she is entitled to an award of punitive damages under Title VII.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in her favor against Defendant and grant her all compensatory and other damages suffered, together with punitive damages, liquidated damages, attorneys' fees, costs, interest and other such legal and equitable relief as the Court deems just and proper in an amount in excess of that required for diversity jurisdiction pursuant to 28 U.S.C. § 1332.

**RESPECTFULLY SUBMITTED THIS 25th DAY OF FEBRUARY 2021.**

**HAMMONS, HURST & ASSOC.**
Mark Hammons, OBA No. 3748
Amber L. Hurst OBA No. 21231
Brandon D. Roberts, OBA No. 34012
325 Dean A. McGee Ave.
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Email: amber@hammonslaw.com
*Counsel for Plaintiff*

10